Good morning, Your Honor. Alan Crowley for the appellants, Wendy Thomas and Union SEIU Local 721. Unfortunately, we don't have mics that rise up to somebody of your height. So try to point them at your mouth and project a little bit. Okay. Alan Crowley representing the appellants, Wendy Thomas and the Union SEIU Local 721. The appellants have sued to stop retaliation against the union's lead negotiator. That's what the suit was about. We believe there was errors on three parts by the lower courts. The lower court applied the wrong standard to analyze many of the adverse actions. It was approximately 30 adverse actions of various levels of severity alleged, and the lower court did not analyze many of them. The lower court wrote, defendants have no obligation to explain away events that are of no legal significance. That's at page 32 of the judgment. You agree that there are certain things that happen in the workplace that fall below the level of an adverse action? Well, I — As a general proposition, you have to — I'm not saying about this, but you agree that some things that — There is, but the way it's analyzed is whether it has a reasonable effect of deterring an employee from engaging in the things. In the Ulrich v. Los Angeles case, in that case, there was only two allegations, one that the employer looked the wrong way and verbally assaulted the employee. And that was all the only two allegations. In that case, the court found those two allegations alone was too low to raise a constitutional issue. But in this case, when we have a whole plethora where the court didn't analyze the removal of teaching assignments, which cost Thomas $9,000 a year, or not allowing her to have paid break time between central dispatch and BCTC, those are far above the level. And those are part of the campaign of retaliation that occurred over years. But, yes, in theory, of course, as it says in the Kosalter v. City of Salem case, you know, the First Amendment is not to be trivialized. But there isn't a bright-line rule. It all depends on the context. And stuff happens in jobs. People have been moved around. And not everything rises to the level of, you know, if you could make an issue of everything, then everything would become a lawsuit. It would be very difficult to have any control over employees. Well, of course, of course. I mean, that's ‑‑ there are many allegations in there. Of course, an employee never knows whether those things are taken for a certain reason, because there's usually never a direct statement that an action is taken because of their protective activities. The complaint alleged a whole series of actions from various levels, which they contend and the court contended were somewhat trivial. But the error was that the court didn't analyze many of them, like the removal of teaching assignments, which is certainly a cost a lot and affected Ms. Thomas, or others that are far below ‑‑ far above the standard. And the court did apply effectively a bright-line rule. The court should have looked to see whether those actions reasonably would have deterred a reasonable employee from continuing to engage in activities. Okay. The court did look at certain major actions. Yes. Maybe we should talk about those, and then we can sort of add the ‑‑ Okay. The lesser ones are the ones that the court thought was lesser. Right. Well, I mean, there's many of them. The only ones that the court looked at, the court looked at eight actions. Six of the ones were actually briefed. Two of them were not briefed by the parties. I think the court ‑‑ But they were in your complaint, were they not? Yes. They were parts of the allegation. And you hadn't withdrawn those allegations. Right. So it was perfectly appropriate for the court to look at them. It was appropriate for the court to look at them, but it wasn't appropriate for the court not to look at other ones that were significant. The court focused on ‑‑ Well, that's a different issue. Yes. Okay. But the ones, for example, that the court did look at, and as we discussed, when you have three internal affairs investigations of an employee who for 13 years has never been investigated, and then she becomes active in the union, and within less than a year and a half there's three internal affairs investigations, most people would think that would be an issue. Well, let's take them in order. One was based on a complaint, fairly serious complaint, by a former employee. Former employee, right? Right. What are they supposed to do? Say, well, she's a shop steward, we can't investigate her? No, no. We can't look into it? I mean, I ‑‑ Well, in ‑‑ Then you get a complaint from another employee saying you looked the other way. Well, but the ‑‑ when you have one internal affairs investigation, okay, that's possibly understandable. But when you have three in such a short span of time, that's where the issue becomes. And even with respect to the first one, where it was a trainee who complained, when 90 percent of the trainees do not make it to the program and they are routinely, and many of them complain, there's not an internal affairs investigation for a complaint like that. It's the discriminatory application of work rules, which is the issue. Do we have a sampling of what other kinds of complaints other people have made? Other trainees have made? I mean, these seem like fairly serious allegations. I don't know. You say 90 percent of them complain. Is that in the record? Yes, it is in the record, that between 75 to 90 percent of the trainees, the dispatch trainees, do not make it through. But do they complain? Many of them complain. And there were statements from, yes, in the record regarding from the declaration of Winnie Thomas, who was the dispatch training supervisor, that there were often complaints about the way the training was conducted, but never had a complaint led to an internal affairs investigation. That was, and like I say, it's the sequence of the three of them within the span of a year that was a troubling aspect. The second one, for example, they initiated an internal affairs investigation because she CC'd her attorney, after this lawsuit had been filed, when she questioned her supervisor about why her pre-approved vacation had been withdrawn when she was involuntarily transferred for the third time. I mean, most workplaces, a supervisor would talk to an employee and say, you don't do that. You don't initiate an internal affairs investigation for CCing an attorney on an e-mail. And so that's the kind of inconsistent application which a jury could say, well, this shows motivation, that the real motivation is they're throwing the book at her, having sergeants. Well, on the second investigation, she went twice before warned about improper use of e-mails, right? Well, well, there you go. So once was 13 years ago when she was a trainee, but they didn't conduct an internal affairs investigation. The other time was seven years ago, but they didn't conduct an internal affairs investigation. So why, if the previous times they don't do internal affairs investigations for wrong e-mail use, do they do on the third time? For a lot of, for the same reasons that sometimes judges will give probation or supervisor release on the first offense, and they might not on the second or third offense. I mean, because you figure people who have been warned before should have learned their lesson. I mean, it does not on its face strike me as... Right, but that's an argument that the judge has to make, that the jury should make. That's the, we raise the circumstantial arguments, and the jury decides whether it's believable or not. It's not the judge's purview to say, well, I think it makes sense that this e-mail warrants an internal affairs investigation. And what about the theft of the documents? Well, it's characterized as a theft of the documents, but it's, that's not what happened. I mean, what happened in the record shows was that she was rebutting an aspect of a performance evaluation, walked into the office that she had just been booted out of, and asked to photocopy documents to rebut her performance evaluation. Again, and the witness that was there next to her wasn't even interviewed. Eventually, the whole charge she was written up for, that was all withdrawn because they realized their investigation was shoddy. Again, it's examples of throwing an internal affairs investigation that are very severe when they wouldn't normally do that. And the reason they do that is because she's the leading negotiator, and she's riling the sheriff's department officials. I have a much more narrow question. Why should we not, even if we otherwise were persuaded by your argument, affirm summary judgment as to MacArthur and, I'm not sure if I'm pronouncing this right, which amend, G-E-M-E-N-T, because they lack authority to commit the adverse employment actions that you're complaining about? Well, with respect to MacArthur, MacArthur was the director of employee relations for the whole county. He was one of the highest level officials in the county. And he was the one that, you know, he chastised her for acting as a steward in an e-mail and saying that if she acts like that, she could lose her job. And, well, the threat was there. It wasn't quite that it would lose her job. But he is basically threatening her for engaging in union activity. He certainly had the authority to make that kind of a threat. So I don't think it's proper. There's a dispute of facts as to whether he has that authority. With respect to G-E-M-E-N-T... No, the question is what adverse employment action would he have had authority to take against her? He would have the authority to, as the director of employee relations, initiate any level of adverse employment action. It would have to be, you know, probably processed to the sheriff's department. But, you know, and it's not the, I mean, there's no justification for harassing an employee. And it's not the level of the action that's actionable. And what about G-E-M-E-N-T? Well, G-E-M-E-N-T engaged in several actions that are in the record regarding, you know, removal of the computer resources, which weren't that discussed in the summary judgment motion because of limited space. And she was Ms. Thomas's first-line supervisor, because there was two levels, there was two supervisors, and took several of the actions, like the removal of some of the computer resources that she needed for her job. Limited space? Huh? Limited space? What are you referring to? Well, eight days to respond to a summary judgment motion. And so one makes choices as to what we can argue in terms of the evidence. So you don't mean limited space? Limited briefing space and time. Limited time? Is that what you're referring to? No. You're saying that you should be excused from raising evidence that is important to determining a particular individual's summary judgment liability because you felt that you didn't have enough time to include it? Is that your argument? No. We made allegations. We had defendants. And through the course of evidence and the amount of time to respond, we can't include everything and make decisions. Jumendi is probably the defendant who we had the least proof of motivation and had the ability to engage in the actions, but it was unknown at the time of discovery, as it coincided with summary judgment, as to whether that level, you know. So are you still appealing from the summary judgment as to Jumendi? I would say no with respect to Jumendi, but yes with respect to MacArthur. I only have three minutes left, so I think I'd like to reserve some time. Great. Thank you. We'll hear from you. Good morning, Your Honors. May it please the Court, my name is Edward Zappia. I'm here on behalf of defendants, appellees, cross-appellants. For this Court's review, what I think is appropriate is starting with the correct order of addressing Monell and qualified immunity. Once those issues are disposed of, no one needs to get to the detailed, delineated facts, which, of course, I'm happy to do. But in the Court, in applying Monell and lack of county liability, the county is dismissed as a defendant. Applying qualified immunity to these individuals, to which they're clearly entitled under the law, the most serious allegation against any of the defendants is a employment action of either reassigning the plaintiff or of initiating an investigation based on a complaint. So what's unclear in the law about not being able to retaliate against employee-free union activity? There's nothing unclear about that. So if the allegation, the factual allegation, is that these were steps taken in retaliation, why is qualified immunity at issue? Because on qualified immunity, you don't just assume that to be true. In this case, by the way... Well, that seems to collapse with the summary judgment inquiry, doesn't it? No, not on qualified immunity. On the qualified immunity arguments, the public officials are entitled to be completely immune from suit, particularly for actions taken within the ordinary scope of their duties and discretion. In this case, even the allegations, the factual allegations, not the conclusory legal opinions, are that they took mostly relatively immaterial employment actions. Wait a minute. You say they're immaterial. Yes. But, and the district court with regard to the main merits motion, but on qualified immunity, which the district court didn't rely upon, I don't understand the difference. Suppose she's reassigned, but she's accepted as a given, which is the allegation, and there's some evidence to support a proposition. She's reassigned from one office to another because her supervisor didn't like all the time she was spending on union activities. Why would that supervisor be eligible for qualified immunity? Because under qualified, because a supervisor could not be expected to know, especially in a sheriff's department where reassignments and transfers are routine, that simply reassigning or transferring an employee, which is part of their duties and part of the supervisor's customary daily duties, would be a violation. No, but if they took that action with an intent to retaliate, then they would not be entitled to qualified immunity, correct? I would agree with that. So I don't see what's the difference. This is the point Judge Clifton is making. Why is it, in this case, the qualified immunity issue any different from the issue that the court addressed below? If the court below is right that you're entitled to summary judgment, then there's no qualified immunity issue. If the court is wrong, if a reasonable juror could have found that some of these actions were taken with retaliatory intent, then qualified immunity would not apply, would it? Well, if there was proven intent, but again, to your point. Well, that's the allegation. And you can put events in juxtaposition. If the court can decide as a matter of law there's no intent, that ends it on the merits. But I don't, I mean, I just don't understand how you say we can start with qualified immunity and not have to get to the merits, because it seems to me unless there's an unclear proposition of law, in the end it's going to be pretty much the same thing. Well, I mean, I would agree to the extent depending on the juror. Okay, so let's get to the main merits. Well, but on the main merits, well, two issues. The first is what I think is significant on SEIU's primary appeal or primary appeal issues. This court did exactly what the Burlington Northern Court expressly authorizes and, in fact, requires. The district court below did review all of the allegations. There's this contention, or at least inference, that it ignored many of the allegations. All of the allegations were addressed in the record. All of the court stated specifically it reviewed the record every single page and then, as required by Burlington Northern, addressed the materially adverse issues which it made its findings, which may deter a complaint in the future. So what about the loss of $9,000 for the reduction in teaching? In that particular one, that would be without question something that might be materially adverse, but there's no evidence the court overlooked or ignored that. The court spent its time addressing those which, by the way, we seem to all agree were material. SEIU's complaint. So why, on the one I just mentioned, what is, why couldn't a reasonable juror infer that that was retaliatory? Well, I don't know what a reasonable juror could or could not conclude, but even under. Then shouldn't we have a trial? Well, no, because when you look at all of the allegations, I think there's no material issue Thomas was given all of her rights she requested, all that she was afforded, and the court went to the next step on adverse employment actions. By the way, determining whether something's adverse or not is only the initial step. Even if something is an adverse employment action, the next step is then to analyze whether there was justification and business reasons for the decisions. And in this case, the court addressed those and did find in each instance that there were legitimate business reasons and justifications not related. Why isn't that a jury issue? In other words, they say that this was retaliatory. You say it was taken for business reasons. They can point to a variety of things, such as timing that suggests it was retaliatory. You can point to various things that suggest it was taken for business reasons. Why isn't that a classic jury question? Well, because the evidence, the summary judgment is a full evidentiary motion. By the standard you're implying, it's just if there's an allegation, then that gets over summary judgment. And that's not the standard, to answer your question, because the evidence before you. I appreciate you're telling me the standard for summary judgment, but that's not my question. Well, to respectfully answer your question, is because this court reviewed the evidence, and in its review of the evidence on summary judgment, it found the evidence demonstrated that the county had presented justifiable, legitimate reasons for its decision. But that's not the right standard, is it? The question has to be, at the end, if taking everything most favorably to the non-movement, could a reasonable juror, even when confronted with these explanations, still conclude that it was retaliatory? Isn't that the standard? I don't think that's the standard exactly. Is there a triable issue of a material fact? That's what the court reviews for. How is that different from what Judge Rakoff just said? Well, the court, because the court doesn't. It's a triable issue if a reasonable juror could make that finding. Well, if you presume that to be the case. I'm not presuming anything. I just don't understand what's different between you disagreed with the standard laid out by Judge Rakoff, and you told me something that I thought was exactly the same thing. If there's something different, I'd like to know what it is, because I'm missing it. On summary judgment, our contention is the court did exactly what it's required to do. It reviewed the evidence. It reviewed the arguments of the parties. And it made its determinations. What determination? It's not a determination like a bench trial. It reviewed the evidence and decided that the defendant's case was right. That's not the determination, is it? No. What's the determination? Well, for example, there were many determinations. No, no, no, no. I don't need examples. I mean, what's the determination? I think it's pretty simple. I think it's what Judge Rakoff just told you. But you said that's not it. So I want to know what it is. Well, the determination, for example, one of them, there were many. The determination is, for example, on the first reassignment. Isn't the determination whether a reasonable jury could make that finding? That's all I want to know. And if it's not, I want to know what it is. Well, it's my understanding the determination on summary judgment is whether plaintiff has submitted evidence to raise a triable issue of material fact. Which means what? Such that it should go to a jury for determination. Which means what? It means that a reasonable jury could make that finding, doesn't it? Isn't that what the standard is? Well, I'll accept that as the standard. Well, tell me what it's different. This is the last time we'll pose it. But I'm just completely baffled by your refusal to acknowledge that that's the standard. I can't figure out what's different about what you're trying to say. Well, I mean, I'll accept that as the legal standard. The distinction is that the trial court went through and made those determinations and determined, based on the evidence, that no reasonable juror would make those determinations, if that answers the court's question. Okay. I have four minutes left. I would like to address the county's... How do you justify? Let's take the first transfer. You don't think that a reasonable jury could find the first transfer was a retaliation? No. Wendy Thomas had been told in advance that her entire unit was going to be moved. Wendy Thomas was aware they were out of space. Wendy Thomas and her entire unit were simply physically relocated to a different area where there was more space. I don't think it's reasonable, particularly since she had been told that the entire unit was being moved and the entire unit was moved. How about the loss of the $9,000? Again, also, as addressed in the record below, teaching assignments rotate. Wendy Thomas's teaching assignment rotated. And, by the way, she was not... It's a pretty good explanation. And the jury might buy it, but the jury might also say, look at the evidence and say, no, that's not why they did it. They did it because they were out together. Why would that be a reasonable finding on their part? Well, I think the court looked at... Well, the court below looked at that evidence. I know what the court below did. I'm asking you... Because... Why a reasonable jury couldn't disagree with that? Because in that instance, Wendy Thomas was not treated disparately or differently. She was treated like all others. She was given... Wasn't there evidence that the rotation was often postponed so that it wasn't an automatic rotation? Yeah, the rotation certainly was not automatic. It wasn't... But in her case, they threatened it right after she became active in the union. Well, that's actually not true either. She became active in the union in 2009, and the teaching assignments were rotated later in 2010 and 2011. There was not the direct correlation. But there's certainly no dispute in this case that Wendy Thomas was constantly engaged in union activity. So as far as showing a direct link, that's difficult to do, because nearly every action would be related to some union activity. There's something I wasn't clear on. Maybe you can clarify for me. At some point, she made a complaint that she was being retaliated against, and there was a finding made that she was correct in one respect, but that your client declines to say what that finding was specifically. Do I have that right? I don't think so. But preceding this litigation, Wendy Thomas filed an internal complaint that had about 13 allegations, many of which were subsequently in the case. That was investigated internally over the next year, and maybe that's what you're referring to. Yeah, and wasn't one of them... Twelve were rejected, but one was accepted, right? Correct. What was that one? I don't recall as we stand here, which in that internal affairs investigation works out. Wouldn't that be relevant to a reasonable juror in assessing whether there was retaliation, that the defendant's own investigation had revealed at least one instance of retaliation? Well, I think that would depend on what the claim was and what the charge was. Well, that's why I'm asking what it was. But you don't know. I don't recall the single charge as we stand here. Your Honor, I would like to at least address the cross-appeal in my last 30 seconds. And on the fees issue, the two issues we raise for this court to look at is we believe the court below did apply the wrong legal standard in finding that it would not impose fees simply because the case did not appear completely meritless at the outset. Ninth Circuit cases reject that contention, and the court also seemed to address arguments that it was only if an entire claim was frivolous and not allegations. And the Primus Auto and Ninth Circuit cases also address that that is not the standard, nor would those standards seem to make sense or be appropriate under that standard if any single one allegation of 50 at the outset of a case were not frivolous, that would mean no matter what happened for the rest of the litigation, one year, two years, a person would be immune from fees. Thank you. Thank you. Mr. Grifley, Your Honor. Well, the first transfer you mentioned that he asked about, the June 2009 transfer, is not even on appeal. That one we did not appeal. I'm sorry? The June 2009 transfer is not on appeal. That's the one, that's the first of the four involuntary transfers. It's just the second, third, and fourth ones that are on appeal. With respect to the court's order. He's incorrect regarding, you know, the motivation. We have the e-mail from Mr. Grotefend where he specifically says in October 6, 2009, that he wants to move Wendy Thomas out of the dispatch training unit supervisor position because she's looking at things as a union representative and not as a supervisor. That's at 1876 in the record. It might have been miscited, but it was in the record. Lastly, the issue of the fees. The county is a bit incorrect in the sense that it's, you know, since the standard is so low with respect to what can be pled as retaliatory action, that's why all kinds of things are pled in the complaint, from very severe actions to more minor actions. But the way the courts obviously look at these allegations, and this court did, this court looked at the allegations both at the onset of the allegation, when the preliminary injunction order was issued, and also at the time the summary judgment was discussed. The court looked at it at all stages. And the court found that, well, that there's a common core, that many of these allegations were part of a common core of retaliation, and that's what we pled. We had a campaign of retaliation. You know, what we had here was a union leader. We tried at all different levels. It was an internal affairs complaint that was filed. That didn't stop the retaliation. Grievances were filed. That didn't stop the retaliation. A charge to the public employee relations board was filed. That didn't stop the retaliation. And she's the lead negotiator for the union. And so as this continued on, we filed the Section 1983 lawsuit. We did get some relief in June of 2009, because she was under a gag order during internal affairs investigations in 2011, and the gag order was making it difficult for her to feel like she wasn't violating the gag order when she was discussing and bargaining and talking to members about union activities, because in the internal affairs investigations, they were asking her about what was happening in bargaining and such. So that's why we had this preliminary injunction order that removed the gag order and allowed her to continue to be the negotiator. Ultimately, we think that this should be returned to the jury, because there's a lot of evidence that showed that a jury could use to determine that the actions were taken because of impermissible reasons. Thank you. Thank you. We're next here arguing the last case on the calendar, Coos v. City of Anaheim.
judges: Rakoff, Kozinski, Clifton